

**FILED**

**DECEMBER 5, 2008**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |  |
|---|---|---|
| DIRK RALPH GORHAM, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | 2:06-CV-0075 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner DIRK RALPH GORHAM has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 47th Judicial District Court of Randall County, Texas for the offense of aggravated assault and the resultant forty-year sentence. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that Petitioner's federal application for habeas corpus relief should be DENIED.

I.
## PROCEDURAL HISTORY

On December 18, 2002, in Cause Number 14835, petitioner was indicted on two charges of aggravated sexual assault. Petitioner pled not guilty to the charges. At trial, the sexual assault victim, petitioner's step-daughter, testified that Gorham *had not* sexually assaulted her and that she

had invented the entire story while playing a game of truth or dare. Despite this recantation, the jury found petitioner guilty. The trial court entered a judgment consistent with the jury's verdict and sentenced petitioner to a term of forty years' imprisonment in the Texas Department of Crimianl Justice, Correction Institutions Division on each charge, such sentences to run concurrently.

Petitioner appealed to the Seventh Court of Appeals, arguing (1) the evidence was legally and factually insufficient to support the jury's verdict and (2) the trial court reversibly erred by allowing "an inordinate amount of hearsay testimony" during the trial. The Seventh Court of Appeals affirmed the trial court's judgment. Petitioner sought discretionary review, and the Court of Criminal Appeals refused his petition in October 2004.

Petitioner then filed a state application for habeas corpus relief on December 14, 2005. The Texas Court of Criminal Appeals denied relief, without written order, on February 22, 2006. *In re Gorham*, No. WR-34,194-02. On March 14, 2006, petitioner filed this federal petition. Said petition was received and file-marked by this Court on March 16, 2006.[1] Respondent filed an answer on July 17, 2006.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends that the State of Texas is holding him in violation of the Constitution and laws of the United States for the following reasons:

1.      Petitioner is actually innocent.

2.      The trial court erred by admitting inadmissible testimony from the outcry witness.

3.      The trial court erred by admitting hearsay under the excited utterance exception.

---

[1]*See Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998) (a prisoner's federal habeas corpus petition is deemed filed when he delivers the petition to prison officials for mailing to the district court).

4.        Petitioner received ineffective assistance of counsel during his trial.

5.        Petitioner received ineffective assistance of counsel on appeal.

6.        The trial court erred by allowing certain testimony from the nurse who examined the sexual assault victim.

7.        The trial court erred by admitting the videotape of the sexual assault victim's outcry statement.

8.        The trial court erred by allowing a one-sided read-back of the testimony of a Child Protective Services (CPS) worker.

9.        The trial court allowed the attorneys to empanel the jury in a discriminatory fashion.

## III.
## STANDARD OF REVIEW

This case was filed subsequent to the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the standards of review set forth in the AEDPA apply to this case. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim:

(1)        resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)        resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Furthermore, all factual determinations made by a state court shall be presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by the petitioner. 28 U.S.C. § 2254(e).

The ruling of the Texas Court of Criminal Appeals denying petitioner's state habeas

application without written order constituted an adjudication of petitioner's claims on the merits. *Salazar v. Dretke*, 419 F.3d 384, 398 (5th Cir. 2005). Because petitioner presented the court of criminal appeals with the same grounds for habeas relief that he presents to this court, we address the merits of petitioner's claims.

## IV.
## THE MERITS OF PETITIONER'S CLAIMS

A court will not grant federal habeas corpus relief unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated. In determining whether an error was so extreme or a trial so fundamentally unfair that a retrial is necessary, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

## A.
## Actual innocence

In his first ground, petitioner alleges he is actually innocent and that he has new evidence proving his innocence. Because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact," free-standing actual innocence claims are not cognizable on federal habeas corpus review. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). Rather, "a claim of actual innocence is 'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quoting *Herrera*, 506 U.S. at 404, 113 S.Ct. at 862). "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have

convicted him in the light of the new evidence.'" *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir.

2001) (quoting *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).

In this case, petitioner presents three letters from two doctors who purportedly examined the

sexual abuse victim and determined she did not show any physical signs of sexual abuse. Petitioner

claims these letters constitute "new evidence" warranting the granting of his writ of habeas corpus.

Petitioner's "new evidence" is in the form of letters, and not affidavits. Consequently, such

evidence is impermissible hearsay.

Even if, however, the Court considers those letters, there is no evidence bolstering the

reliability of these letters. *See id.* (saying that new evidence must be reliable). One of the

examinations was performed over two years after the assault, and the other examination was

performed almost three years after the assault. One of the letters indicates the doctor may have been

misinformed about certain aspects of the original sexual assault exam the doctor appears to discredit.

For example, in her letter, the doctor stated the victim's mother (who took the victim in for the

examination) told the doctor the original sexual assault examination was performed two months after

the assault. In fact, the examination was done less than one week after the assault. The doctor

additionally stated the victim's mother told her the victim denied any sexual assault at the time of

the exam. The testimony at trial, however, was that the victim, in fact, had alleged a sexual assault

had occurred at the time of the examination. Therefore, the letters are unreliable as at least one of

the doctors apparently received erroneous information at the time she performed her examination.

Furthermore, even if the Court were to consider the letters as if they were new, reliable

evidence, they would still be insufficient to support petitioner's actual innocence claim because

petitioner has failed to meet his burden of demonstrating that it is "more likely than not that no

reasonable juror would have convicted him in the light of the new evidence." *See id.* The doctors' statements contradicted the testimony of the nurse who examined the victim and who determined that a sexual assault had occurred. There is nothing to show that the jury would have changed its verdict based upon this conflict, if indeed there is one, especially considering the fact that the victim herself testified at trial that she had not been sexually assaulted. Accordingly, petitioner is not entitled to relief on his actual innocence claim.

### B.
### Outcry Witness Testimony

In his next ground, petitioner contends the trial court violated his right to due process by allowing testimony from the outcry witness. Pursuant to the Texas Code of Criminal Procedure, if a child tells a person eighteen years of age or older that he or she was sexually abused, the person to whom the child spoke can testify at trial about what the child said. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a), (b)(3) (Vernon 2005). Such a statement "is not inadmissible because of the hearsay rule if . . . the child testifies or is available to testify at the proceeding in court or any other manner provided by law." *Id.*

In this case, the victim told her twelve-year-old friend, A.L., about the abuse. A.L. told her own mother, Susan, what the victim had said. Susan then confronted the victim about her statements. At that point, the victim told Susan the same story that she had told A.L. about the sexual assault. At trial, Susan testified as the outcry witness under Texas Code of Criminal Procedure article 38.02. Petitioner now contends Susan only testified about what A.L. told her, not about what the victim told her. A review of the trial record, however, reflects that Susan (A.L.'s mother) testified to what the victim directly said to her. In fact, the trial court admonished Susan at the beginning of her testimony that she could not testify about what her daughter (A.L.) told her,

but could only relay what the victim had told her.

Petitioner additionally urges that Susan's testimony was not corroborated, especially because the victim recanted at trial and testified she had lied to the outcry witness. As the state appellate court noted, however, it is within the jury's purview to choose which witness it believes—even if that means that the jury chooses to not believe the victim's trial testimony. *See Gorham v. State*, No. 07-03-0109-CR, 2004 WL 1208055, at *2 (Tex. App.—Amarillo June 2, 2006, pet. ref'd). Therefore, the state's denial of petitioner's writ was not based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d). Furthermore, because the child victim testified at trial, there were not any Confrontation Clause violations. *See id.* Petitioner is not entitled to relief on his second claim.

## C.
### Admission of Hearsay Testimony

In his third ground, petitioner complains the trial court erred by improperly allowing hearsay testimony under the excited utterance exception, in violation of his due process rights. At trial, A.L., a young girl and a friend of the victim, testified what the victim had told her on the morning of one of the assaults. Petitioner objected to such testimony. One of the grounds advanced by the State to support the admission of this testimony was that it was an excited utterance. While there is no ruling to the defendant's objection on the record, A.L. was recalled the following day, and the State laid the predicate for an excited utterance exception. A.L. then testified what the victim told her without any objection from petitioner.

The determination of whether the girl's testimony met the excited utterance exception to the traditional hearsay exclusion was a evidentiary ruling for the state trial court. State evidentiary rulings, even erroneous ones, are subject to federal habeas review only if they constitute a denial of

fundamental fairness under the Due Process Clause. *Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001). "The test applied to determine whether trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)).

Because there was no objection on the record when A.L. testified the following day, petitioner failed to preserve the issue for review. In fact, on direct appeal, petitioner raised this claim. The court of appeals held:

> The record reveals that trial counsel made only three objections to the challenged testimony; however, each of them were generic, nonspecific hearsay objections. Furthermore, appellant failed to object to other questions by the State concerning the same subject matter and calling for hearsay responses. Neither did appellant request a running objection to any evidence related to what the victim told A.L. about her stomach hurting on the day of the offense. Thus, appellant has failed to preserve error regarding the admission of that evidence.

*Gorham*, 2004 WL 1208055, at *4.

"The 'Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.'" *Styron*, 262 F.3d at 453 (quoting *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991). Because petitioner failed to preserve error at trial, review of the complained-of hearsay by this court is procedurally barred. Even if this Court were to review the merits of petitioner's claim, the claim would fail. Petitioner

fails to demonstrate that the jury would have issued a different verdict without A.L.'s testimony, especially in light of the fact that Susan (A.L.'s mother) gave the exact testimony about the victim's statements regarding that morning's abuse. Accordingly, petitioner cannot obtain relief on this claim.

D.
Ineffective Assistance of Trial Counsel

In his fourth ground, petitioner contends he received ineffective assistance of trial counsel in violation of his constitutional rights. Petitioner complains trial counsel was ineffective for the following reasons:

1. Trial counsel failed to have a firm command of the laws and facts of the case, and particularly the laws governing the use of enhancements.

2. Trial counsel failed to conduct an independent investigation of the witnesses in response to petitioner's allegation that the enhancement paragraphs of the indictment were not true.

3. Trial counsel failed to object to the State's amendments to the indictment on the morning of the trial.

4. Trial counsel failed to perform an independent investigation into the qualifications of the State's expert witness so as to impeach the expert during the trial.

In order to obtain habeas corpus relief on grounds of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. However, as petitioner correctly noted in his petition to this Court, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial

strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).

To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A petitioner must additionally demonstrate that the trial counsel's deficient performance rendered the trial fundamentally unfair. *See Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L.Ed.2d 180 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*, 113 S. Ct. at 844. A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4 (5th Cir. 1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

*1. Trial Counsel's Representation as it Relates to the Enhancement Paragraphs*

In his first and second contentions of ineffective assistance of trial counsel, petitioner urges that his trial counsel did not have a firm command of the pertinent laws and facts regarding the enhancement paragraphs alleged in the case and that counsel failed to conduct an independent investigation of the witnesses as it related to the enhancement paragraphs in the indictment. Petitioner contends he told his attorney the enhancement paragraphs in the indictment were not true, but that his attorney did not follow up on such information and, as a result, petitioner received more punishment than was warranted.

The indictment was enhanced based on petitioner's prior commission of two different felonies—possession of a controlled substance in 1988 and aggravated assault in 1991.[2] Petitioner contends he was not actually convicted of aggravated assault in 1991, but was only convicted of "felony assault." Petitioner contends he told this to his attorney, but that the attorney did not seek to resolve the incorrect enhancement paragraph.

Assuming, for purposes of argument, that petitioner's trial attorney did fail to investigate petitioner's allegations of an incorrect enhancement, petitioner cannot demonstrate such deficiency prejudiced him. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A review of the evidence admitted at petitioner's trial reveals that, in 1991, petitioner pled guilty to "aggravated assault, second offender," which was classified as a third-degree felony. Petitioner is correct that there was no affirmative finding of use of a deadly weapon during the commission of the assault. The lack of such an affirmative finding, however, is not dispositive of the main issue, which is whether petitioner ever had a judgment issued against him for aggravated assault, as alleged in the indictment. The record reveals that he pled guilty to, and was sentenced for the crime of, aggravated assault. The enhancement paragraphs of the indictment, therefore, were correct. However, even if petitioner's trial counsel was deficient in his performance on this issue, there is nothing to support a finding of a reasonable probability that but for the error, the result would have been any different. *See id.*

### 2. Trial Counsel's Representation as it Relates to the Amended Indictment

---

[2] This is contrary to petitioner's contention that the indictment alleged he was previously convicted of "aggravated assault and aggravated robbery" in addition to the possession charge. A reading of the indictment indicates petitioner was alleged to only have committed "aggravated assault" not "aggravated assault and aggravated robbery."

In his third contention of ineffective assistance of counsel, petitioner urges that his trial counsel failed to object when the State amended the indictment prior to trial. Under Texas law,

> After notice to the defendant, a matter of form or substance in an indictment or information may be amended *at any time* before the date the trial on the merits commences.

TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 2006) (emphasis added). As the record reflects, on February 5, 2003, the State moved to amend the indictment in two places. First, the State moved to change count one from penetrating the anus to contacting the anus. Second, the State moved to change count two from penetration of the victim's sexual organ by the hand to penetration by the finger. The State moved to amend the indictment before petitioner's trial started on February 10. There was, therefore, no objection for petitioner's attorney to make to the indictment amendment.

Under the Texas Code of Criminal Procedure, the only action petitioner could have taken would have been to request a ten-day period to respond to the amendment. *See id.* The record, however, contains a waiver signed by Gorham himself saying he waived that ten-day preparation period. Under Texas law trial counsel's performance was not deficient. *See Strickland*, 466 U.S. at 668, 104 S.Ct. at 2064.

### 3. Trial Counsel's Representation as it Relates to His Investigation

In his fourth contention of ineffective assistance of counsel, petitioner alleges that because his trial attorney failed to investigate, the State's expert witness was not impeached after making misrepresentations to the jury. Specifically, petitioner contends Michele Gorday, the nurse who examined the victim, represented in her trial testimony that she was working in her capacity as a nurse for Northwest Texas Healthcare Systems (NTHS) when she performed the sexual assault exam on the victim. Petitioner presents evidence he contends shows Gorday, in fact, was not working in

such a capacity and argues his trial counsel should have discredited Gorday.

When petitioner filed his motion for habeas corpus relief at the state court level, the State secured an affidavit from Gorday stating that she was, in fact, functioning in her capacity as a NTHS nurse. The director of emergency services for NTHS also submitted a supporting affidavit, which explained that NTHS has a Sexual Assault Nurse Examiners ("SANE") program. SANE nurses work for NTHS and may perform sexual assault exams at either NTHS or at the children's advocacy center. According to these affidavits, NTHS pays its nurses to be on call in the event the children's advocacy center needs to have someone perform a sexual assault exam. If a nurse is called out to the center and performs an examination, the district attorney pays the nurse for the examination. Furthermore, as both affidavits stated, NTHS pays SANE nurses for any time that they spend testifying at a trial that results from the sexual assault exam. In opposition to these affidavits, petitioner offers a letter from the Risk Management Director at NTHS saying the nurse was not functioning in her capacity as a NTHS nurse when she performed the exam. In denying petitioner's motion for habeas relief, the State court implicitly ruled the nurse was credible and that she was, actually, working in her official capacity as a NTHS employee at the time she performed the exam. Such a determination is presumed correct. *See* 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Further, even if this Court did not make such a presumption and instead were to assume trial counsel failed to investigate and that the failure allowed the nurse to make misrepresentations to the jury, petitioner has completely failed to demonstrate how he was prejudiced. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The nurse testified to her extensive education for and experience with sexual assault examinations, and petitioner has not shown how the jury's verdict would have

varied based on whether she was actually working for NTHS when she performed the examination. Petitioner has not demonstrated ineffective assistance of trial counsel, and he is not entitled to habeas relief.

E.
Ineffective Assistance of Appellate Counsel

In his fifth ground, petitioner contends his appellate counsel's representation was below that required by the Sixth Amendment because appellate counsel failed to raise all meritorious issues on direct appeal, and, specifically, failed to raise ineffectiveness of trial counsel on appeal.

An ineffective assistance of *appellate* counsel claim is also analyzed under the two-pronged test enunciated in *Strickland v. Washington. Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992). Thus, a petitioner must demonstrate appellate counsel was deficient, and the deficiency prejudiced his case. *Strickland,* 466 U.S. at 687. To prove prejudice, a petitioner "must show a reasonable probability that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764,145 L.Ed.2d 756 (2000).

Although a right to effective assistance of appellate counsel exists, that right does not include a right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 752, 754, 103 S.Ct. 3308, 3313, 3314 (1983); *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Instead, appellate counsel's decision to raise certain issues and not others is evaluated in the same manner as trial counsel's decisions at trial, *i.e.*, was "counsel performing in a reasonably effective manner." *Green*, 160 F.3d at 1043.

As discussed above, under the stringent *Strickland* test, trial counsel was not ineffective. Consequently, appellate counsel was not ineffective by refusing to argue on direct appeal that trial counsel was ineffective. Petitioner argues appellate counsel wrote him letters indicating there was

14

potentially an ineffective assistance claim but that the appellate attorney incorrectly said that the ineffective assistance claim could not be raised for the first time on appeal. Assuming this were true—that appellate counsel thought (as indicated in a letter that petitioner presents to this court) the trial counsel "really goofed," and that appellate counsel misunderstood the proper manner for bringing an ineffective assistance claim on appeal—it makes no difference. Trial counsel was not ineffective, and any appeal arguing such would have failed. Accordingly, appellate counsel did not render ineffective assistance by failing to raise ineffective assistance of trial counsel on direct appeal.

F.
Improper Admission of Witness Testimony

In his sixth ground, petitioner contends the trial court violated his constitutional rights by allowing the impermissible and unreliable testimony by Michele Gorday, the nurse who examined the victim. At trial, Gorday testified she was employed as a charge nurse at NTHS and the head of the sexual assault nurse examiners program. She testified that, in addition to her nurse education, to become a sexual assault examiner she had to complete ninety-six hours of classroom training in sexual assault examination and ninety-six hours of clinical experience in the area. Since becoming a sexual assault nurse examiner, Gorday stated she had received an additional three hundred hours of classroom training for sexual assault examinations. She further testified she received certification as a pediatric and adult sexual assault examiner from the state and had performed over five hundred sexual assault exams. Gorday then relayed how she came to meet the victim, what the victim had told her prior to the physical examination, and the conclusions she made from her examination. Ms. Gorday testified the victim told her about one means by which petitioner sexually assaulted her (by touching her anus with his penis, which was alleged in one count of the indictment). Ms. Gorday

also testified her physical examination revealed the victim had additionally suffered trauma to her sexual organ (which would have resulted from the second count in the indictment alleging petitioner used his finger to penetrate the victim's sexual organ).

As petitioner notes, Gorday admitted on cross-examination that she did not make a time line of events, take pictures of the victim to support her conclusions, videotape the examination, or create other forms of evidence to support her conclusions. Gorday only made a diagram indicating where she saw trauma to the victim's sexual organ. The nurse testified she did not know, specifically, how the trauma to the sexual organ had occurred, but that the only thing that would cause such trauma would be if something penetrated the organ. She additionally stated she did not know whether the victim was telling the truth when she claimed that her father had sexually assaulted her, only that she discovered trauma to the victim's sexual organ.

Petitioner repeats his charge that Gorday misled the jury into thinking she was performing the exam in her official capacity as a nurse for NTHS. Petitioner supports this argument by pointing to the form on which the nurse recorded her observations. This form, which was admitted into evidence at trial, is titled "Emergency Department Northwest Texas Healthcare System, Amarillo, Texas, Sexual Assault Forensic Examination Record." As discussed above, when petitioner filed his motion for habeas relief at the state court level, the State secured an affidavit from Gorday and from the head of the sexual assault nurse examiners program stating that Gorday was, in fact, functioning in her capacity as a NTHS employee at the time of the exam. As discussed previously, the State court implicitly ruled Ms. Gorday was credible when it denied relief. This Court presumes that such a determination was correct. *See* 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Because, under this presumption, the nurse was acting in her official capacity,

petitioner's complaint that she was not working in such a capacity is, at the most, a factual dispute. Furthermore, even if nurse Gorday was not acting in her official capacity as the hospital's nurse, petitioner has not demonstrated how such a misrepresentation, especially considering the nurse's extensive training and education, prejudiced petitioner, i.e., would have caused the jury to render a "not guilty" verdict. *See Rogers*, 848 F.2d at 609.

Petitioner next complains the nurse's failure to take any pictures, make a video recording of the examination, or assemble a time line of events, and her sole reliance on a hand-drawn diagram of her findings made the nurse's testimony unreliable. Petitioner notes the nurse could not state with certainty what caused the trauma to the victim's sexual organ and that the victim never gave the nurse a history of petitioner sexually assaulting the victim by penetrating her sexual organ. While the nurse testified to what she discovered during her exam, petitioner is correct that she did not draw any conclusions during her testimony about how the victim received the trauma. The nurse did, however, note on the "Sexual Assault Forensic Examination Record" that she created at the time she performed the exam that a finger was used as an "Object of Penetration."

The reliability of Ms. Gorday's evidence was a determination for the jury to make at trial. On habeas review, this Court cannot find (nor has petitioner raised) a violation of clearly established federal or constitutional law by the nurse's failure to create such supporting evidence. *See* 28 U.S.C. § 2254(d). In fact, the nurse acknowledged the lack of such evidence and her inability to draw any conclusions about the sexual assault itself on cross-examination. The jury had at least some admissible evidence before it in the form of the nurse's testimony and the diagram upon which to base its conclusion that petitioner committed both counts of sexual assault as alleged in the indictment. *See id.*

Lastly, petitioner complains the trial court should not have admitted the nurse's testimony under Texas Rule of Evidence 803(4), which states that hearsay is admissible if it was given for the purpose of medical diagnosis or treatment, because there had already been "interrogation and manipulation by adults" of the victim. First, petitioner did not object to Ms. Gorday's testimony on this ground at trial. Therefore, under the Texas contemporaneous objection rule, federal habeas review of this claim is procedurally barred. *See Coleman v. Thompson*, 501 U.S. at 750; *Styron*, 262 F.3d at 453. Even if this court were not barred from reviewing this contention, however, there is nothing in the record to support petitioner's claim that the CPS workers and police officers who had questioned the victim had manipulated her. Nor was any such evidence presented at trial. The state court, accordingly, did not err by allowing such testimony. Petitioner's sixth claim should be denied.

## G.
### The Videotaped Interview

In his seventh ground, petitioner contends the trial court erred by admitting the videotaped recording of the victim at trial. Petitioner urges the interviewer failed to continuously record the interview, used improper interviewing techniques, asked leading questions, and used information from an outside source during the initial interview of the victim.

The videotape about which he complains, however, was offered by petitioner. The videotape is a recording the interview of the victim by a worker at the child advocacy center to which the victim was taken. On the tape, the victim recants and says the entire story was fabricated and that she made the false outcry based on a dare. The victim specifically denied petitioner had ever touched her. Petitioner cannot claim that he was harmed as a result of evidence he offered. *See Harris Corp. v. Erickson Inc.*, 417 F.3d 1241, 1258 (5th Cir. 2005) (stating that a petitioner invites

error when that petitioner asks the trial court to make a ruling—such as admitting evidence—and later challenges that favorable ruling on appeal).  Accordingly, petitioner cannot obtain relief on his seventh ground.

H.

<u>One-Sided Read Back of Transcript to Jury</u>

In his eighth ground, petitioner complains his right to due process was violated when the trial court allowed the court reporter to read back to the jury the transcript of a CPS worker's testimony.

Under the Texas Code of Criminal Procedure, article 36.28,

> In the trial of a criminal case in a court of record, if the jury disagree [sic] as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute.

TEX. CODE CRIM. PROC. ANN. art 36.07 (Vernon 2007).  This law, under which the trial court was acting when it had the testimony read back, is not contrary to any part of the federal constitution or any ruling of the United States Supreme Court.  It actually is in line with precedent from this Circuit that a trial court has broad discretion in determining whether to read back portions of trial testimony to the jury during deliberations.  *See U.S. v. Schmitt*, 748 F.2d 249, 256 (5th Cir. 1984).

During petitioner's trial, a CPS worker testified that after the nurse had completed the sexual assault exam, the CPS worker took the victim back to CPS offices.  During the car ride, the victim was "sobbing uncontrollably."  When the CPS worker asked the victim why she was crying, she stated that it was because she did not want to see her mother, who had told her to not tell anyone about the sexual abuse.  However, the victim had previously testified at trial that she had *not* told the CPS workers that her mother was going to be angry because she had instructed the victim to not tell anyone about the abuse

During deliberations, the jury sent a note to the trial court indicating that it was in dispute over the testimony given by a CPS worker concerning the conversation that the CPS worker had with the victim in the car on the way to the children's advocacy center. In response to the jury's note, the trial court had the court reporter read back the pertinent part of the CPS worker's testimony. Petitioner contends the trial court should have also read to the jury the transcript of the victim's explanation about what happened during the car ride so as to give the jury both explanations, not just the CPS worker's side of the story.

When the trial court had a portion of the trial transcript read back to the jury at the jury's request and because the jury was in dispute over that portion, the trial court was following Texas law. *See* TEX. CODE CRIM. PROC. ANN. art 36.07. That law is not contrary to the laws of the United States. *See Schmitt*, 748 F.2d at 256. In fact, had the trial court done what petitioner suggests and read back a portion of testimony over which the jury was not in dispute, and which it did not want to hear, the trial court could have committed error. *See* TEX. CODE CRIM. PROC. ANN. art 36.07.

Petitioner additionally complains the CPS worker's statements that were read back to the jury constituted hearsay. However, the testimony from the CPS worker directly contradicted the victim's testimony and served to impeach the victim. As such, the CPS worker's testimony was admissible. *See* TEX. R. EVID. 801(e)(1)(A) (establishing that a statement is not hearsay if the declarant testifies at trial and the statement is inconsistent with the declarant's testimony). Petitioner's ninth ground should therefore be denied.

# I.
## Jury Selection Process

In his ninth ground, petitioner contends he was denied equal protection and due process rights because the trial court allowed trial counsel to select a jury in a discriminatory fashion. Before voir dire, the trial court asked counsel to limit their individual voir dire to the first thirty-two venirepersons so as to keep voir dire as short as possible. Petitioner alleges that doing so "effectively removed the sole African-American from potential service." Reviewing the strike lists of both the State and the defense as contained in the clerk's record, one can see that the jury was chosen from the first twenty-four venirepersons. Therefore, assuming the trial court did commit error by limiting individual voir dire questioning to the first thirty-two venire people, such error was harmless to petitioner. The first twenty-four people were acceptable in the eyes of both State and defense counsel, and the African-American venireperson would not have been chosen even if the trial court had not requested the limitation on voir dire.[3] Furthermore, in a non-capital felony case, such as petitioner's, each side is entitled to ten peremptory challenges, and the jury must consist of twelve people. CCP arts. 33.01(a), 35.15(b). Thus, in a typical case, if each side uses all ten peremptory challenges and still must seat a twelve-person jury, then only the first thirty-two venirepersons would need to participate in voir dire. Given these calculations, the trial court's request for a limitation of individual voir dire to the first thirty-two venirepersons was not purposefully discriminatory, but rather a request based on judicial economy and the practicalities of jury selection. Accordingly, Petitioner's claim of discrimination is without merit and should be denied.

---

[3]In fact, petitioner's trial counsel has filed an affidavit stating that, as an African-American himself, he perceived no discrimination in the jury selection process.

# V.
## RECOMMENDATION

Petitioner has failed to demonstrate the state court proceedings "resulted in a decision that was contrary to . . . clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner DIRK RALPH GORHAM be DENIED.

# VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 5th day of December 2008.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of

Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).